UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

        Plaintiff,                         Case No.  1:17cr145

        v.                              Judge Michael R. Barrett

Curtis Joash,

        Defendant.

**ORDER**

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 22); the

government's Response thereto (Doc. 23); Defendant's Reply (24) and Notice of

Supplemental Authority (Doc. 28); and the government's Surreply (Doc. 27).   A hearing

was conducted on February 28, 2018.  The government alleges that Defendant's

mother died on April 23, 1990; thereafter, the Social Security Administration, unaware of

her death, continued to directly deposit her benefits into a checking account held jointly

in her name and Defendant's name for 27 years (Doc. 23, PageID 50).  The government

contends that Defendant has stolen government property, in violation of 18 U.S.C.

§ 641.  In arguing for dismissal, Defendant asserts that – because the Social Security

money was deposited into a private joint bank account – it was not government property

at the time it was allegedly converted, and thus not subject to federal jurisdiction.

    **I.**      **ANALYSIS**

Pursuant to 18 U.S.C. § 641:

Whoever embezzles, steals, purloins, or knowingly converts to his use or
the use of another, or without authority, sells, conveys or disposes of any
record, voucher, money, or thing of value of the United States or of any
department or agency thereof, or any property made or being made under

> contract for the United States or any department or agency thereof . . .
> [s]hall be fined under this title or imprisoned . . . .

The Sixth Circuit has held that, "[i]n order to convict someone of theft of government property under § 641, the government must prove that a defendant: "(1) knowingly (2) stole or converted to the use of another (3) something of value of the United States." *United States v. Forman*, 180 F.3d 766, 769 (6th Cir. 1999) (citation omitted).

There are four types of violations under § 641: "(1) where the stolen property clearly belongs to the government and federal jurisdiction is undisputed; (2) where the federal government, or one of its agents, acts as a custodian or bailee of property, so that the transitory possession makes it the property of the United States; (3) where property that originated with the federal government passes to private hands, but the government retains sufficient control so that the funds remain federal property; and (4) where a government employee or agent has received property but fails to convey it to the United States and the question is whether the funds acquired the status of government property." *United States v. Osborne*, No. 16-6760, 2018 U.S. App. LEXIS 7883, at *8 (6th Cir. March 29, 2018) (citing *United States v. Hall*, 549 F.3d 1033, 1038 (6th Cir. 2008; *United States v. Klingler*, 61 F.3d 1234, 1238 (6th Cir. 1995)).

Where money passes to private hands (*i.e.*, the third scenario), courts in the Sixth Circuit undertake the following analysis to determine if federal jurisdiction exists:

> We … ask whether the government retained sufficient supervision and control over the funds involved such that the funds retained their federal character. *See Hall*, 549 F.3d at 1038 ("[T]he issue is whether the government retained sufficient control over the funds involved."); *United*

> *States v. Barger*, 923 F.2d 855, at *9 (6th Cir. 1991) (asking whether the government retained sufficient "supervision and control" over the property); *Littriello*, 866 F.2d at 715 (looking for "evidence of federal control and supervision" over the funds in question"); *United States v. Wheadon*, 794 F.2d 1277, 1284 (7th Cir. 1986) ("[W]e look to see whether the federal government still maintained supervision and control over the funds at the point when the funds were converted."); *United States v. Johnson*, 596 F.2d 842, 845 (9th Cir. 1979) (looking for "proof of the supervision and control exercised by the government over the funds and their ultimate use"). To answer this question, courts engage in a fact intensive inquiry, looking for indicia of government supervision and control. *See Hall*, 549 F.3d at 1038; *Barger*, 923 F.2d at *9; *Foulks,* 905 F.2d at 930.  (*supra*, at 6).

*Osborne*, 2018 U.S. App. LEXIS 7883, at *8-9.[1]

In *Osborne*, the Sixth Circuit compiled a list of factual determinations for courts to consider:

> (1) Did the government retain a reversionary interest in the funds?  (2) Did the government place restrictions on how the funds are used, spent, or maintained?  (3) Did the government impose internal controls like record keeping requirements, audit requirements, accounting procedures, or reporting requirements?  (4) Did the government require that it have the right to inspect or access the private entity's records or perform audits?  (5) Are the funds governed by federal regulations or statute?  (6) Did the government retain the right to terminate the contract or cut off funding to the private entity?  (7) When there is a contract between the private entity receiving the federal funds and a third party receiving funds from the private entity, did the contract have a federal character or subject the third party to federal restrictions?

---

[1] Accord:  *Hall*, 549 F.3d at 1040 ("Importantly, [the private entity] was required to track the interim reimbursements it received and return any funds for costs it did not incur."); *Foulks*, 905 F.2d at 929 (highlighting that the funds retained their federal character because the government "limited or controlled the use of these funds in that the [private entity] was required to report back to the federal agency, and any unused funds or misused funds were to be returned to the federal agency").

*Id.* at *17-18. "While courts have consulted a number of different factors, they have not explicitly indicated the relative importance or weight of the various factors." *Id.* at *18. "However, it seems this Circuit has placed an emphasis on the first three factors." *Id.*

Here, there are federal regulations governing the payment of social security funds. Pursuant to 42 U.S.C. § 402(a)(3)(b) and 20 C.F.R. § 404.311(b), the recipient of funds from the Social Security Administration must be a living person. Furthermore, the regulations allow the Social Security Administration to recover overpayments from the recipient or her estate. 42 U.S.C. § 404(a)(1)(A); 20 C.F.R. § 404.501. *Accord*: 31 C.F.R. § 210.10 (governing reclamation of certain benefit payments). The government persuasively argues that the "reference in the statute to an 'estate' refunding money to the government shows that Congress specifically intended that SSA could recoup money in situations in which the beneficiary has died." (Doc. 23, PageID 52). While the Court is hesitant to characterize the government's interest as necessarily "reversionary" (for reasons further explored below), the funds have retained their "federal character" by virtue of the following: (1) the funds automatically deposited after April 23, 1990 were never transferred to a proper Social Security recipient, because Defendant's mother was deceased; and (2) federal statutes and regulations grant the SSA the power to recover overpayments, post-deposit.

In support of dismissal, Defendant attempts to argue that the funds at issue lost their "federal character" once they were deposited into a private checking account. Defendant relies on *United States v. Howard,* 787 F.Supp 769 (S.D. Ohio 1992), which is inapposite. In *Howard*, Judge Spiegel found federal jurisdiction lacking over a defendant who was accused of stealing his mother's social security money. The

4

government prosecuted him on the basis that he stole "government money." *Id.* at 771. Judge Spiegel granted the defendant's motion for acquittal, reasoning that the money at issue was not "government money." *Id.* Specifically, at the time of conversion, defendant's mother was a *living* resident of a nursing home. Her Social Security benefits were directly deposited into a personal joint checking account. The mother was a "proper Social Security recipient" (*id.* at 770), so the defendant in *Howard* allegedly converted the funds of his mother—not the government. *Id.* at 771. To be clear, the money at issue was still allegedly "stolen"; however, once it transferred to a proper recipient, it was no longer "government money," so 18 U.S.C. § 641 did not apply.

The *Howard* fact pattern does not exist in this case. Here, the money at issue was not paid out to a "proper Social Security recipient," because Defendant's mother's entitlement ended upon her death. Even though the money was deposited into her joint checking account, the money did not "belong" to her or to Defendant. In other words, the money was deposited into the account of an individual with no right to claim the benefit whatsoever. 42 U.S.C. § 402(a); 20 C.F.R. § 404.311(b). To align himself with the acquitted *Howard* defendant, Defendant must essentially convince the Court that he converted his mother's money. But, the allegedly converted money was not his mother's to begin with—neither she nor her estate had a legitimate interest in it. *Id.* Furthermore, the Court need not find that the government retained a "reversionary" interest in the money, because the defendant and his deceased mother had no *initial* interest in the deposited funds.

Finally, the Court would note that – even though Defendant relies heavily on *Howard* – the case rather unambiguously differentiates defendants who steal Social

5

Security funds from living individuals, from defendants who retain Social Security funds directed to deceased individuals. *Howard*, 787 F.Supp. at 771. Judge Spiegel squarely addressed the distinction. For example, Judge Spiegel rejected the government's attempt to liken the *Howard* defendant to other federal defendants who had been prosecuted for keeping Social Security funds directed to their deceased parents' accounts. *Howard,* 787 F.Supp at 769. Specifically, Judge Spiegel rejected the government's reliance on *United States v. Walker,* 563 F.Supp. 805 (S.D. Iowa 1983), calling *Walker* "inapposite." *Howard,* 787 F.Supp at 771. In *Walker,* the Southern District of Iowa exercised jurisdiction over and convicted a defendant who had retained Social Security benefits automatically deposited into her deceased father's account. *Id.* at 809-10. Judge Spiegel acquitted the *Howard* defendant, because "unlike the funds . . .in *Walker*, the funds in [this] account did not constitute 'money … of the United States.'" *Howard,* 787 F.Supp at 771.

Here, if the government proves the facts it has alleged, the Defendant in this case aligns with *Walker*, not *Howard.* In *Walker*, the defendant was convicted of violating 18 U.S.C. § 641.

## II. CONCLUSION

Defendant's argument therefore fails for the reasons stated above and the Motion (Doc. 22) is **OVERRULED**.

**IT IS SO ORDERED.**

*s/ Michael R. Barrett*

Hon. Michael R. Barrett
United States District Judge
